Hillsborough
No. 89-037

THE STATE OF NEW HAMPSHIRE

v.

JAMES P. POULICAKOS

June 13, 1989

*John P. Arnold,* attorney general (*Tina Schneider,* assistant attorney general, on the brief and orally), for the State.

*Joanne Green,* assistant appellate defender, of Concord, and *Bjorn Lange,* public defender, of Concord (*Ms. Green* on the brief, and *Mr. Lange* orally), for the defendant.

BROCK, C.J. The defendant challenges an order of the Superior Court (*Gray,* J.) authorizing his detention pending his trial for second degree murder. He appeals pursuant to RSA 597:6-e, III (Supp. 1988), contending that the trial court erred in holding his detention hearing more than 72 hours after his arrest and violated his right to confront witnesses against him under the State Constitution by allowing the State to present its evidence by an offer of proof, without calling any witnesses. *See* RSA 597:6-a, VII (Supp. 1988). We stayed processing with respect to the first issue as it had already been accepted, briefed, and argued, and we remand that question for consideration in light of our decision in *State v. Hall,* 131 N.H. 634, 557 A.2d 997 (1989). We further hold that the State may proceed by offer of proof so long as it supplies a witness or witnesses who can make meaningful the defendant's right to cross-examination, and we therefore affirm in part and remand.

The body of Richard Miville, Jr., was discovered floating in the Merrimack River on August 23, 1988. During questioning by police the next day, the defendant, James P. Poulicakos, admitted that on the 23rd, he stole coins from Miville's apartment. Within days, the defendant left New Hampshire, and he later was arrested on a fugitive warrant in San Diego, California, on January 5, 1989. After he was returned to New Hampshire, the State filed a motion for pretrial detention under RSA 597:6-a (Supp. 1988).

At the detention hearing, the State made an offer of proof regarding the cause of the victim's death, the defendant's departure from New Hampshire, and the defendant's inculpatory statement to police in California. The defendant objected, arguing that allowing the State to proceed by offer of proof violated his due process rights to confront and cross-examine adverse witnesses and to otherwise challenge evidence presented. The court overruled the objection. The defendant then cross-examined the only State witness present, the police captain who headed the investigation into Miville's death. The court ordered the defendant detained, finding that because the defendant had "apparently admitted causing the death" of Miville and had "already fled the State," he posed a serious risk of flight, and no condition or combination of conditions would reasonably assure the defendant's appearance at trial. *See* RSA 597:6-a, VI (Supp. 1988).

The defendant contends on appeal that the superior court's interpretation of RSA 597:6-a, VII (Supp. 1988), permitting the State to present evidence at his detention hearing by offer of proof, without presenting any witnesses, violated his right of confrontation under the State Constitution. *See* N.H. CONST. pt. I, art. 15. We disagree.

At a pretrial detention hearing held "to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of the person as required or the safety of the person or of any other person or the community. . . ." RSA 597:6-a, VII (Supp. 1988), a defendant "shall be afforded an opportunity to testify, to present witnesses on his own behalf, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." *Id. See generally State v. Hall*, 131 N.H. 634, 557 A.2d 997. The statute also provides that "rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." RSA 597:6-a, VII (Supp. 1988). The statute is silent with respect to means the State may use to meet its burden of convincing the court that the defendant should be detained pending trial. *Id.*

Federal courts construing identical language in the federal bail statute, 18 U.S.C. § 3142(f), have permitted the government to proceed by proffer and have not required it to present live witnesses. *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987); *United States v. Martir*, 782 F.2d 1141, 1145 (2nd Cir. 1986); *United States v. Acevedo-Ramos*, 755 F.2d 203, 207–08 (1st Cir. 1985). Under the federal statute, trial judges retain the discretion to require presentation of live witnesses when the proffer's

credibility has been put into question. *United States v. Acevedo-Ramos, supra* at 207.

■ We hold that under RSA 597:6-a, VII (Supp. 1988), as under the federal law, the government may proceed by proffer. If the defendant raises questions about the accuracy of the State's proffer, the court can require the prosecution to present witnesses to buttress its offer of proof. *See State v. Hall, supra* at 639, 557 A.2d at 1000; *United States v. Acevedo-Ramos supra.*

■ Furthermore, the defendant has the right "to cross-examine witnesses who appear at the hearing." RSA 597:6-a, VII (Supp. 1988). In order to make this right meaningful, the State must supply a witness or witnesses capable of being effectively cross-examined. *See United States v. Acevedo-Ramos supra.* A witness must be more than a mere reporter of information gathered by others. In this case, for example, the witness supplied by the State led the homicide investigation and sought the warrant leading to the defendant's arrest; he was therefore capable of being effectively cross-examined. The State, however, need not make available all the sources of the information underlying its offer of proof. The statute suspends the rules of evidence for detention hearings, RSA 597:6-a, VII (Supp. 1988), and witnesses therefore may present hearsay testimony. If unsatisfied with the opportunity for cross-examination, and if the accuracy of the State's proffer is in question, a defendant can always call as adverse witnesses other sources of the State's information. *See State v. Hall, supra* at 639, 557 A.2d at 1000.

■ The defendant contends that the trial court, which acted in conformity with these procedures, violated the State due process clause. N.H. CONST. pt. I, art. 15. Due process protections apply where, as in a detention hearing, an individual faces a potential deprivation of liberty. *In re Gamble*, 118 N.H. 771, 775, 394 A.2d 308, 310 (1978). In determining whether challenged procedures afford the process necessary to protect a liberty interest, we consider the following factors:

> "(1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the

additional or substitute procedural requirements would entail."

*Petition of Bagley*, 128 N.H. 275, 285, 513 A.2d 331, 338–39 (1986).

We address each of these factors in turn. First, a defendant in a detention hearing has a substantial interest in remaining free pending trial.

Second, the procedures followed at a detention hearing provide adequate safeguards against an erroneous deprivation of a defendant's liberty. A defendant has the means to challenge the State's case by cross-examining witnesses present for the State, by presenting other witnesses, by presenting evidence relevant under RSA 597:6-a, VII (Supp. 1988), and, if successful in raising questions about the accuracy of the State's proffer, by convincing the court to require the State to present supporting witnesses. *See State v. Hall*, 131 N.H. at 639, 557 A.2d at 1000. Because witnesses may report hearsay testimony in detention hearings, RSA 597:6-a, VII (Supp. 1988), the substance of the State's evidence would be much the same regardless of whether offered by the prosecutor or by a witness repeating hearsay.

Third, requiring the State to present its case through live witnesses would increase the fiscal and administrative burdens not only on the court, but also on the prosecution and on law enforcement officials. It would prolong the proceeding, demand additional preparation with witnesses, and necessitate the appearance of law enforcement officials to present the State's evidence. After considering the three *Bagley* factors, we conclude that the State need not present its evidence at a detention hearing through live witnesses because the procedures in place do not violate due process under our constitution.

The defendant argues, however, that a defendant in a detention hearing should receive, at the least, the procedural safeguards afforded a convicted defendant facing revocation of a grant of conditional liberty, which include "the right to confront and cross-examine adverse witnesses." *Stapleford v. Perrin*, 122 N.H. 1083, 1088, 453 A.2d 1304, 1307 (1982). In *Moody v. Cunningham*, 127 N.H. 550, 503 A.2d 819 (1986), the defendant points out, this court stated that "live testimony, tested by confrontation and cross-examination, is the time-honored method for achieving" accurate factual determinations. *Id.* at 554, 503 A.2d at 822.

We conclude that neither *Stapleford* nor *Moody* requires the State to put on live witnesses when arguing for a defendant's pretrial detention. In neither of those cases did the defendant have

an opportunity to cross-examine a State witness familiar with the events relied upon to justify a deprivation of liberty. The defendant's right to cross-examination at the detention hearing, guaranteed by statute as well as by the due process clause, *see* RSA 597:6-a, VII (Supp. 1988); N.H. CONST. pt. I, art. 15, is satisfied by the State's supplying a knowledgeable witness who can be cross-examined effectively.

The right to confront adverse witnesses face-to-face, as separate from the right to cross-examination, is not absolute in pre-trial proceedings. *See Moody, supra* at 555, 503 A.2d at 822. The defendant's right to confrontation is satisfied by his opportunity for cross-examination and by his opportunity to raise questions about the accuracy of the State's proffer in his own offer of proof or through his own witnesses, inducing the court to require the State to produce witnesses supporting its proffer. *See United States v. Acevedo-Ramos*, 755 F.2d at 207-08.

We therefore hold that the trial court employed proper procedures which complied with the statute's guidelines while preserving the defendant's due process rights.

*Affirmed in part; remanded.*

BATCHELDER, J., dissented; the others concurred.

BATCHELDER, J., dissenting: I respectfully dissent from the opinion expressed today insofar as it permits the prosecution to proceed by offer of proof in pre-trial detention proceedings. I would reverse the trial court's decision and remand for a new hearing for two reasons: first, our prior holdings in *Stapleford v. Perrin*, 122 N.H. 1083, 453 A.2d 1304 (1982) and *Moody v. Cunningham*, 127 N.H. 550, 503 A.2d 819 (1986) require the State to use witnesses when presenting its case; and second, an analysis of the considerations listed in *Petition of Bagley*, 128 N.H. 275, 285, 513 A.2d 331, 338–39 (1986) leads to the conclusion that they weigh in favor of requiring witnesses who can make meaningful the defendant's right to confrontation.

In both *Stapleford* and *Moody*, we held that the procedures used to reimpose a suspended sentence or to revoke parole, respectively, were inadequate because the defendants did not have an opportunity to confront a State witness familiar with the events relied upon to justify a deprivation of liberty. *Moody*, in particular, is instructive in this regard. There, in a hearing to revoke the defendant's parole because of alleged violations, the State's evidence consisted solely of testimony by the parole officer concerning the

defendant's arrest and subsequent indictment. 127 N.H. at 552, 503 A.2d at 820. We hold that "[ a]s a general rule, then, there must be a strong preference for confrontation and cross-examination which may be abrogated only upon a specific finding of good cause for denying confrontation." *Id.* at 555, 503 A.2d at 822; *see also Morrissey v. Brewer*, 408 U.S. 471, 487 (1972) (good cause for denying confrontation may exist when witness might be subject to harm if identity disclosed). To allow "the State to meet its burden of proof entirely by use of hearsay or substitutes for live testimony without regard for the right to confrontation would eviscerate the due process protections of *Stapleford*." *Id.*

The majority opinion does not, in my view, distinguish persuasively the situation in *Moody* from the one in this case. The effect of today's holding is to allow the State to meet its burden of proof to deprive a presumptively innocent person of liberty on the basis of hearsay evidence only, without regard for the right to confront the State's witnesses. *Moody* and *Stapleford* specifically prevent this result. On that basis, I would reverse and remand. A liberty interest is never more important than at the points in the process where the defendant is presumed innocent.

I also would add that I do not find the majority's analysis of *Bagley* convincing. Because the court holds today that the State must provide a witness who can make meaningful the defendant's right to cross-examination under the statute, *see* RSA 597:6-a, VII (Supp. 1988), the additional administrative burden of requiring the State to put on such a witness prior to the defendant's case is minimal, at best.